IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ROBERT M. LINSLEY,<br>Defendant. | Case No. 88-cr-00413-CRB-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Robert M. Linsley filed an emergency motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(a). See Mot. (dkt. 73). The basis for Mr. Linsley's motion is that he is 73 years-old, has been in custody for more than 30 years, and is housed at USP Lompoc, where he is at "extreme risk of becoming sick and dying of COVID-19." Id. at 1–2. The matter has been extensively briefed. See Opp'n (dkt. 76); Reply (dkt. 78); Supp. Reply (dkt. 79); July Opp'n (dkt. 86); July Reply (dkt. 87). The Court also held a motion hearing on July 8, 2020. See Motion Hearing (dkt. 85). Having now carefully considered the parties' arguments at the hearing and in their papers, the record in this case, and the relevant law, the Court GRANTS the motion.

18 U.S.C. § 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "[A]fter considering" the sentencing factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable," a court may

United States District Court
Northern District of California

grant the motion to reduce the defendant's sentence in one of two circumstances, the first of which[1] is "if it finds that . . . extraordinary and compelling reasons warrant such a reduction," id. § 3582(c)(1)(A)(i), as articulated by "Congress, the Sentencing Commission, and the Bureau of Prisons," see July Opp'n at 1.  A reduction in sentence under § 3582(c) must also be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A); see also Dillon v. United States, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission policy statement applicable to 18 U.S.C. § 3582(c)(2) remains mandatory, even after United States v. Booker, 543 U.S. 220 (2005)).  The applicable Sentencing Commission policy statement, U.S.S.G. § 1B1.13, directs that a court may only grant compassionate release if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

      Mr. Linsley has met all of these requirements.

      First, he has exhausted his administrative remedies because more than thirty days have lapsed since he submitted his request for compassionate release to the warden of his facility.  Mot. at 2 (counsel for Mr. Linsley submitted a request on his behalf to the Warden of USP Lompoc on April 1, 2020), Ex. A (dkt. 73-2) (4/1/20 Request to Warden).

      Second, the Court has considered all of the applicable sentencing factors from 18 U.S.C. § 3553(a), and finds that they are consistent with granting Mr. Linsley's motion for compassionate release.  The Court recognizes, of course, that the nature and circumstances of the offenses in this case are troubling.  See 18 U.S.C. § 3553(a)(1).  In 1988, Mr. Linsley was sentenced to life in prison on the charge of being a felon with three convictions for violent felonies in possession of a

---

[1] The second is that "the defendant is a least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."  See id. § 3582(c)(1)(A)(ii).  Although Mr. Linsley initially argued that he qualified for release under this provision, see Mot. at 5, the parties agreed at the hearing that Mr. Linsley's sentence was not "imposed under section 3559(c)," see 18 U.S.C. § 3582(c)(1)(A)(ii), nor could it have been, as the statute was not in existence when he was sentenced.  It escapes the Court's understanding why Congress included the clause about section 3559(c)—thereby treating a defendant given a mandatory life sentence more favorably than a defendant whose life sentence was not mandatory—but so be it.

1   firearm, in addition to various lesser terms on other counts relating to four armed bank robberies.
2   See Judgment (dkt. 75-16). Mr. Linsley's history and characteristics at the time of sentencing
3   reflect a lengthy criminal history: he had spent "almost half his life in prison" for a range of
4   crimes, including multiple robberies. See Gov. Sentencing Memo. (dkt. 75-8) at 3; PSR[2] at 5–11
5   (recounting Mr. Linsley's Prior Record).

6   But that was over thirty years ago. Mr. Linsley's disciplinary record over the past 19 years
7   demonstrates that he has not displayed any violence while in BOP custody. See Mot. at 9, Ex. D
8   at 316–18. The Court looked into an incident the government mentioned in its opposition brief,[3]
9   in which a weapon was found in Mr. Linsley's cell's air duct seven years ago. See Opp'n at 5–6;
10  BOP Discipline Hearing Officer Report (re 7/14/2013).[4] The Court found Mr. Linsley's statement
11  at the DHO hearing to be compelling—such that, at the motion hearing on this matter, the Court
12  explained that the probative value of the evidence as to the weapon was inadequate to raise a
13  suspicion that Mr. Linsley is a dangerous person. Certainly in light of Mr. Linsley's crimes, and
14  his history and characteristics, there was a need for a significant sentence in order to reflect the
15  seriousness of the offenses, to promote respect for the law, and to provide just punishment. See 18
16  U.S.C. § 3553(a)(2)(A). A thirty-one year sentence is "sufficient, but not greater than necessary,"
17  to accomplish just that. Id. § 3553(a). Mr. Linsley is now 73 years old. Reply at 6. He is very
18  unlikely to recidivate. See USSC, The Effects of Aging on Recidivism Among Federal Offenders
19  (December 2017) (hereinafter "Effects of Aging"), available at
20  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
21  publications/2017/20171207_Recidivism-Age.pdf. The Court believes that he needs no further
22  deterrence from criminal conduct and that the public is safe from further crimes. See 18 U.S.C. §
23  3553(a)(2)(B), (C).

---

[2] The Court received a copy of the PSR from the probation department. At the motion hearing, the Court ordered the report released to counsel. The government's subsequent briefing reflects that the government received it. See July Opp'n at 4.

[3] To its credit, the government referred to this incident at the motion hearing as the only incident while Mr. Linsley has been in custody with any bearing on his dangerousness.

[4] The government submitted this report by way of email in advance of the motion hearing and expressed an intent to file it on the docket under seal.

United States District Court
Northern District of California

Third, Mr. Linsley has demonstrated that "extraordinary and compelling reasons warrant" his release, see 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.C. § 1B1.13 n.1D, because he meets the definition of a "New Law" Elderly Inmate pursuant to the BOP's program statement on compassionate release, see PS 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019) (hereinafter "PS 5050.50") at 6. "New Law" Elderly Inmates are "[i]nmates sentenced for an offense that occurred on or after November 1, 1987 (e.g., 'new law'), who are age 70 years or older and have served 30 years or more of their term of imprisonment." Id. PS 5050.50 is therefore very similar to 18 U.S.C. § 3582(c)(1)(A)(ii), but does not include the requirement that the defendant's sentence have been "imposed under section 3559(c)." See id. at 6 n.1 (noting that "[t]hese criteria are different from those provided in 18 U.S.C. 3582(c)(1)(a)(ii)").

The government does not challenge the premise that PS 5050.50 can be a basis for a defendant's compassionate release motion. See Opp'n at 4 (asserting that, to establish "extraordinary and compelling" circumstances, "a defendant must be able to demonstrate" reasons (A)–(C) from U.S.S.G. § 1B1.13 n.1, "or demonstrate some other condition that in the discretion of the Director of BOP qualifies for compassionate release.") (citing United States v. Shields, No. 12-cr-00410-BLF-1, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019)). The government's only argument as to why PS 5050.50 does not apply here is that Mr. Linsley "has not served '30 years or more' on his federal term of imprisonment." Id. at 7. It notes that Mr. Linsley was also convicted of a state robbery or robberies, and that the federal sentencing judge ordered at the time of sentencing that Mr. Linsley's federal sentence "run consecutive to the sentence imposed by the California courts on September 27, 1988."[5] Minutes of Sentencing (dkt. 75-9) at 5; Judgment (dkt. 75-16) at 3. Accordingly, Mr. Linsley served from 1988 to 2000 in state custody, and was not committed to the custody of the BOP until April 13, 2000. See Opp'n at 2. The government

---

[5] While there is not a great deal of information in the record about the state crime(s), Mr. Linsley described having confessed to the crime(s) in his Memorandum of Circumstances in Mitigation of the Committed Offenses, see (75-7) at 2–3, and the government noted at sentencing that "Since the date of the entry of the guilty plea, defendant Linsley has been convicted and sentenced in the State proceedings to a period of 17 years incarceration," Gov. Sentencing Memo. (dkt. 75-8) at 2.

4

1   argues that he "has therefore served approximately 20 years of his federal sentence, not the 30 or
2   more required by the BOP category." See id. at 7.

3         The government points to no authority requiring the Court to read "30 years or more of
4   their term of imprisonment" as "30 years or more of their term of imprisonment in a federal
5   prison."[6]  The government argues simply that "[t]he reference to 'their term of imprisonment' at
6   the end of a sentence referring to a federal offense strongly indicates that the inmate must have
7   served at least 30 years of a federal sentence." Supp. Opp'n at 3. But the sentence does not
8   "refer[] to a federal offense." It says only "an offense that occurred on or after November 1, 1987
9   (e.g., 'new law')." PS 5050.50. The policy statement does not define "term of imprisonment,"[7]
10  and the government's interpretation of that phrase here—that Mr. Linsley's 31 years is really 20
11  years because some of it was spent in a state prison—would work an injustice given the
12  idiosyncrasies of Mr. Linsley's case.

13        Mr. Linsley began his lengthy period of imprisonment by serving time in state custody not
14  because the judge or the government demanded it, but, ironically, by his own choosing. It was
15  Mr. Linsley who "expressed a desire to serve the Federal time to which he is subject to run
16  consecutive to any State time he received. . . . he is hoping to marry soon, and would desire
17  conjugal visitation." PSR at 4–5; see also Gov. Sentencing Memo. at 2 ("In exchange for
18  defendant Linsley's plea[] of guilty, the United States agreed that any sentence imposed upon the
19  federal charges contained in this indictment would run consecutive to any period of incarceration
20  which Linsley received for 2 robberies committed by him in Solano County."). Neither the

---

[6] Again to its credit, the government agreed at the motion hearing that in some instances, time served in state custody can be credited toward a federal sentence.

[7] The Court notes that BOP operations memos relating to other programs have explicitly defined "term of imprisonment" as the aggregate of multiple terms of imprisonment. See, e.g., BOP Operations Memorandum re Elderly Offender Home Detention Pilot Program (2/5/09) at ¶ 3(b) ("The phrase 'term of imprisonment to which the offender was sentenced' refers to the term of imprisonment imposed by the sentencing court(s), whether stated in days, months, or years. . . . Multiple terms of imprisonment (either concurrent or consecutive) are aggregated to determine the term in effect."); BOP Operations Memorandum re Home Confinement under the First Step Act (4/3/20) at ¶ 2(e) ("Term of imprisonment includes multiple terms or imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section.")

sentencing court nor Mr. Linsley could have known that Mr. Linsley's choice, in 1988, to begin what was to be a lifetime in custody by serving time in state prison could impact his eligibility for a compassionate release program that was not written until 2019. PS 5050.50 was designed to address just such unforeseen circumstances. See PS 5050.50 at 1 ("The Bureau uses . . . 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary and compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.").

The clear intent of the "New Law" Elderly Inmate basis for compassionate release is to give consideration to an inmate who is 70 years or older and who has been in custody for 30 or more years. Mr. Linsley—at 73 years old, and after 31 years in custody—fits this definition, even though, through an accident of history, he spent some of his 31 years in a state prison.

Finally, the Court does not believe that Mr. Linsley is a danger to the community. U.S.S.G. § 1B1.13 directs that a court may only grant compassionate release if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Section 3142(g) lays out four factors for determining dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Court has already discussed the seriousness of Mr. Linsley's crimes (the evidence of which he, by pleading guilty, did not dispute), his lengthy criminal history leading up to those crimes, and his exemplary conduct these last 19 years in BOP custody. While a return to his criminal past would harm the community, the Court believes that between his lengthy time in custody, his conduct during that time in custody, and his age, see generally Effects of Aging; Mot. at 9 ("Mr. Linsley's health makes him slower and more sedentary. . . . Mr. Linsley has suffered the effects of age in the form of degenerative joint disease. . . degenerative disc space in his spine . . . and an enlarged prostate. . . ."), his release does not put the community at risk.

For the foregoing reasons, Mr. Linsley's motion for compassionate release is GRANTED. Mr. Linsley's sentence of imprisonment is modified to time served. The Court imposes a special five-year term of supervised release, see 18 U.S.C. § 3582(c)(1)(A), with the mandatory and

standard conditions of supervised release adopted by the Court (with no work requirement), to commence immediately upon release from custody.  The Court imposes the following Special Conditions:

1. Upon release from custody, you must self-quarantine for an additional 14 days, as directed by the probation officer.
2. You must submit your person, residence, office, vehicle, computer, other electronic communication or data storage devices or media, and effects or any property under your control to a search.  Such a search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release.  Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

Prior to release, Mr. Linsley shall undergo a <u>14 day quarantine</u> in BOP custody, which shall commence forthwith.  This quarantine is particularly important as Mr. Linsley's release plan is to live with his elderly father.  <u>See</u> Mot. Ex. F (Declaration of Raymond Linsley) (dkt. 73-3).[8]  Mr. Linsley shall also self-quarantine for 14 days once he arrives at his father's home.

This order is stayed for up to 14 days so that Mr. Linsley can make appropriate travel arrangements and to ensure his safe release.  Mr. Linsley shall be released, following his 14-day quarantine, as soon as appropriate travel arrangements are made and it is safe for him to travel.  There shall be no delay in ensuring that travel arrangements are made, and presumably his counsel can attend to the travel arrangements during Mr. Linsley's time in quarantine.  If more than 14 days are needed to make appropriate travel arrangements and ensure Mr. Linsley's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

The government shall serve a copy of this order on the Warden at USP Lompoc

---

[8] Probation inspected Mr. Linsley's father's home in connection with this motion, and deemed it "suitable for supervised release and approved by the probation office."  <u>See</u>7/15/20 Letter from Probation.

1  immediately.

2  **IT IS SO ORDERED.**

3  Dated: July 20, 2020



CHARLES R. BREYER
United States District Judge